IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **T.A. BRINKOETTER & SONS, INC.,** | ) Case No. 09-80727 |
| a Delaware corporation, | ) |
| | ) Honorable Thomas L. Perkins |
| Debtor. | ) |

## AMENDED PLAN OF REORGANIZATION
## PROPOSED BY SARS CORPORATION

SARS Corporation, a Nevada corporation ("SARS" or "Shareholder"), hereby proposes this Plan of Reorganization (the "Plan") for the purpose of continuing the business of T.A. Brinkoetter & Sons, Inc., a Delaware corporation and the debtor in possession in this chapter 11 case (hereinafter referred to (1) as the "Debtor" for the period on and after the Petition Date as defined below, and (2) as T.A. Brinkoetter for the period prior to the Petition Date) without interruption and as a going concern under the management of the Reorganized Debtor, and providing fair and equitable treatment of the Claims of all of the Debtor's Creditors.

## INTRODUCTION

On March 10, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code, Title 11, United States Code, §§1 *et seq.* (the "Bankruptcy Code"). Since the Petition Date, the Debtor has remained in possession of its property and has conducted its financial affairs as a debtor in possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

As more fully discussed in the Disclosure Statement dated as of March 15, 2010, accompanying this Plan, the funds and property required to effectuate the Plan shall be realized from (a) the capital contribution of up to $1,500,000.00 to be paid by Shareholder on the Effective Date, (b) 700,000,000 shares of publicly-traded common stock in SARS to be issued by SARS and delivered to the Reorganized Debtor on the Effective Date, (c) Accounts Receivable Recoveries, (d) Avoidance Recoveries, (e) the Post-Confirmation Credit Facility, if any, and (f) funds generated by the Reorganized Debtor in the operation of its business.

As discussed below, under the Plan Claims and Interests are classified in 11 separate classes. The Claims classified under Classes 5, 8, 9 and 10 are impaired. Accordingly, each holder of a Claim that is classified under any of those Classes is entitled to vote on the Plan. A Ballot for voting purposes accompanies the Plan. Unclassified Claims and Claims classified under Classes 1, 2, 3, 4, 6 and 7 in the Plan are not impaired, and the holders thereof are deemed to have accepted the Plan. Consequently, the holders of Claims that are not impaired under the Plan are not entitled to vote on

1

the Plan. The Interests of the Debtor's shareholder, SARS, is classified under Class 14 in the Plan. Class 14 Interests are not impaired under the Plan.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION

1.1 "Accounts Receivable Recoveries" shall mean all funds collected by the Reorganized Debtor on account of accounts receivable of T.A. Brinkoetter which existed on the Petition Date and remain uncollected as of the Confirmation Date, less all fees, costs and expenses, including attorneys' fees, incurred by the Reorganized Debtor for compensation of in-house and/or outside professionals employed by the Reorganized Debtor relating to Accounts Receivable Recoveries.

1.2 "Administrative Claim" shall mean, except as provided below, any cost, Claim or expense of the administration of this Chapter 11 case allowed and entitled to priority in accordance with the provisions of §§503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's estate and all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under §§330 or 503 of the Bankruptcy Code against the Debtor's estate or under Chapter 123 of Title 28, United States Code; provided, however, Administrative Claim shall not include any Claims classified under Class 7 in the Plan.

1.3 "Allowed Claim" shall mean any Claim against the Debtor, provided: (a) a proof of claim was timely and properly filed before the Bar Date, pursuant to order of the Bankruptcy Court, or in accordance with the provisions contained in the Plan, or, if no proof of claim was filed, which has been or hereafter is listed by the Debtor in the Debtor's schedules or amended schedules as liquidated in amount and neither disputed nor contingent; and (b) in either such case, a Claim as to which no objection to the allowance thereof has been interposed on or before the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of a claimant. Unless otherwise specified herein or by order of the Bankruptcy Court, Allowed Claims shall not include interest on such Claims for the period from and after the Petition Date, nor shall Allowed Claims include any Claim that may be disallowed under §502(d) of the Bankruptcy Code.

1.4 "Avoidance Recoveries" shall mean property or the value of such property recovered by and on behalf of the Debtor's bankruptcy estate pursuant to §550 of the Bankruptcy Code, less all fees, costs and expenses, including attorneys' fees, incurred by or on behalf of the Reorganized Debtor for compensation of Professional Persons relating to Avoidance Recoveries.

1.5 "Bankruptcy Code" shall mean Title 11 of the United States Code, as in force and effect on March 10, 2009, and any and all amendments thereto through the Confirmation Date.

2

1.6 "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Central District of Illinois, including the United States Bankruptcy Judge presiding in this case, or such other court as may have jurisdiction over chapter 11 cases.

1.7 "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the Rules of the United States District Court for the Central District of Illinois, the Rules of the United States Bankruptcy Court for the Central District of Illinois, and any other rules incorporated by reference by such rules, as the same may be amended from time to time, and as are applicable to cases pending before the Bankruptcy Court.

1.8 "Bar Date" shall mean (a) July 20, 2009 as to Pre-Petition Claims that are not held by governmental units, and (b) September 6, 2009 as to Pre-Petition Claims that are held by governmental units.

1.9 "Business Day" shall mean any day on which federal and state chartered banks are open generally to the public to conduct ordinary commercial banking business in Peoria, Illinois.

1.10 "Cash" shall mean cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks, commercial paper of any entity, including interest earned or accrued thereon.

1.11 "Claim" shall mean any right to payment or equitable remedy arising under or encompassed in §101(5) of the Bankruptcy Code, including, without limitation, any right to payment from the Debtor or debtor in possession that arose on or before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.12 "Closing Date" shall mean the date on which Shareholder remits the capital investment to the Reorganized Debtor and SARS issues the shares of common stock in SARS to the Reorganized Debtor in accordance with paragraphs 15.2 and 15.4, respectively, below.

1.13 "Confirmation Date" shall mean the date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code; provided, however, that if the Confirmation Order or consummation of the Plan is stayed on motion pending appeal, then the Confirmation Date shall be the date of entry of a Final Order vacating such stay provided that the Confirmation Order is in full force and effect on such date.

1.14 "Confirmation Order" shall mean the order entered by the Bankruptcy Court confirming the Plan and approving the transactions contemplated therein.

3

1.15 "Contested Claim" shall mean a Claim as to which an objection in writing has been timely filed in accordance with the Bankruptcy Rules, any order of the Bankruptcy Court, or the provisions contained in the Plan, and until such time as a Final Order is entered by the Bankruptcy Court resolving or determining such objection.

1.16 "Convenience Claim" shall mean an Unsecured Claim in an amount of $15,000.00 or less, or any other Unsecured Claim as to which the holder thereof voluntarily reduces such Unsecured Claim to $15,000.00 in accordance with the instructions and procedures accompanying the Plan and the Disclosure Statement. **THE HOLDERS OF UNSECURED CLAIMS WHO ELECT TO VOLUNTARILY REDUCE THEIR CLAIMS TO $15,000.00 MUST SO INDICATE THEIR ELECTION ON THE BALLOT THAT ACCOMPANIES THIS PLAN.**

1.17 "Creditor" shall mean a person, partnership, corporation or entity that is the holder of a Claim against the Debtor that arose on or before the Petition Date, or a Claim against the Debtor's estate of any kind specified in §§502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.18 "Debtor" shall mean T.A. Brinkoetter & Sons, Inc., a Delaware corporation, the Debtor and debtor in possession in the above-captioned chapter 11 case.

1.19 "Disbursement Agent" shall mean the Reorganized Debtor, or such person or entity, including any replacement thereof or successor thereto, as may be designated by the Reorganized Debtor, and approved by the Bankruptcy Court if and as necessary or appropriate, to receive as custodian and to distribute the funds and to issue the shares of common stock in SARS to be transferred for the benefit of the holders of Allowed Claims pursuant to the Plan.

1.20 "Disclosure Statement" shall mean that certain disclosure statement approved by the Bankruptcy Court and accompanying the Plan.

1.21 "Effective Date" shall mean the later of the first Business Day occurring on or after the thirtieth (30th) day after the Confirmation Date, and the Closing Date.

1.22 "Final Distribution" shall have the meaning ascribed to it in Article XVI, paragraph 16.2 of the Plan.

1.23 "Final Order" shall mean an order or a judgment of a court which (a) has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek review or rehearing has expired and as to which any right to appeal, reargue, petition for certiorari or rehearing has been waived in a manner satisfactory to the Debtor, as a result of which such order shall have become final and enforceable in accordance with applicable law; or (b) if an appeal, reargument, certiorari or rehearing thereof has been sought, the order of the lower court has been affirmed by the higher court to which the order was appealed or from which the reargument or rehearing was sought, or certiorari has been denied and time to take further appeal or to seek certiorari or further

4

reargument or rehearing has expired.

1.24  "Financing Orders" shall mean that certain Final Order entered by the Bankruptcy Court on March 16, 2009, and any other Final Orders entered by the Bankruptcy Court prior to the Confirmation Date, authorizing the Debtor to use cash collateral pursuant to §363 of the Bankruptcy Code, or to obtain credit pursuant to §364 of the Bankruptcy Code.

1.25  "Government" shall mean the United States Department of Treasury, Internal Revenue Service.

1.26  "Interest" shall mean equity security in the Debtor pursuant to §101(16) of the Bankruptcy Code.

1.27  "Mechanics Liens" shall mean any mechanics lien under applicable Illinois law that the holder thereof has not released and as to which the holder asserts the mechanics lien secures any Allowed Claim of such Creditor in whole or in part and which attaches to (a) property in which the estate has an interest, but only to the extent of the value of such Creditor's interest in the estate's interest in such property, or (b) real estate and improvements as to which T.A. Brinkoetter or the Debtor furnished labor or materials, or both; provided that neither the Bankruptcy Court, nor any other court of competent jurisdiction, has entered a Final Order ruling that any such asserted mechanics lien is void, invalid, unperfected or unenforceable; and provided further that nothing contained in the Plan or in the Confirmation Order shall be deemed or interpreted to waive, release or otherwise adversely affect the rights, claims, demands or defenses of the Debtor, the Reorganized Debtor or any third party relating to any such asserted mechanics lien.

1.28  "Petition Date" shall mean March 10, 2009, the date on which T.A. Brinkoetter filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

1.29  "Plan" shall mean this Plan of Reorganization proposed by SARS, as may be amended and/or modified from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.30  "Post-Confirmation Credit Facility" shall mean any credit facility procured and entered by the Reorganized Debtor on or after the Effective Date.

1.31  "Pre-Petition Claims" shall mean all Claims for debts, liabilities, demands or Claims of any character arising prior to the Petition Date.

1.32  "Priority Claim" shall mean any Allowed Claim which is an Unsecured Claim entitled to priority in payment under §§507(a)(2) to (9), inclusive, of the Bankruptcy Code, but excluding Tax Claims and any portion of the Claims classified under Class 7 in the Plan.

1.33  "Professional Persons" shall mean persons, including attorneys, accountants and

5

financial advisors, retained by the Debtor, or to be compensated pursuant to §§326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

1.34  "Pro Rata" shall mean the proportion that the amount of a Claim in a particular class bears to the aggregate amount of all Claims which are entitled to a particular distribution (including Contested Claims until disallowed by Final Order) in such class.

1.35  "Real Estate" shall mean the real estate and improvements owned by the Debtor and situated at 636 East Wood Street, Decatur, Illinois.

1.36  "SARS" and "Shareholder" shall mean SARS Corporation, a Nevada corporation, which is the sole shareholder of the Debtor and whose shares of common stock are publicly-traded over the counter under the symbol SARO.

1.37  "Secured Claim" shall mean an Allowed Claim that is secured by a lien or security interest on property in which the estate of the Debtor has an interest, or that is subject to set-off under §553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in the estate's interest in such property, or to the extent of the amount subject to set-off.

1.38  "Tax Claim" shall mean any Allowed Claim of a governmental unit that arose prior to the Petition Date and that is entitled to priority under §507(a)(8) of the Bankruptcy Code, but excluding ad valorem Claims or other tax Claims of governmental units, if any, if those Claims under applicable law are secured by a lien on real or personal property of the Debtor's estate.

1.39  "Ultimately Allowed Claim" shall mean any Contested Claim to the extent that it becomes an Allowed Claim in whole or in part.

1.40  "Unclaimed Distributions" shall have the meaning ascribed to it in Article XVI, paragraph 16.1 of the Plan.

1.41  "Union Claims" shall mean all Pre-Petition Claims and Administrative Claims arising under collective bargaining agreements by and among T.A. Brinkoetter and the following labor unions, including the Claims of all benefit funds of each of said labor unions:

>       a.  Building & Common Laborers Union Local 159,
>       b.  IBEW Local Union 34,
>       c.  IBEW Local Union 146,
>       d.  IBEW Local Union 176,
>       e.  IBEW Local Union 193,
>       f.  IBEW Local Union 601,
>       g.  Local 99 Plumbers & Pipefitters,
>       h.  Millwright Local Union 1051,
>       i.  Operating Engineers Local 965,

> j.  Plumbers & Pipefitters Local 65,
> k.  Plumbers & Pipefitters Local 137,
> l.  Plumbers & Pipefitters Local 149,
> m  Plumbers & Pipefitters Local 157,
> n.  Sheet Metal Workers Local 1, and
> o.  Sheet Metal Workers Local 218.

1.42  "Unsecured Claim" shall mean any Allowed Claim that is not an Administrative Claim, Secured Claim, Priority Claim, Tax Claim, Union Claim or Convenience Claim.

1.43  Unless otherwise stated, all other terms if defined by the Bankruptcy Code, the Bankruptcy Rules, or applicable decisions shall have such defined meanings.

1.44  The words "herein," "hereof" and "hereunder," and other words of similar import, refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.

1.45  All definitions as may be applicable to the Plan shall be equally applicable to the singular and plural forms of the terms defined.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1  "Unclassified Claims" shall mean Administrative Claims.

2.2  "Class 1 Claims" shall mean Priority Claims.

2.3  "Class 2 Claims" shall mean Tax Claims.

2.4  "Class 3 Claims" shall mean the Secured Claims of the Government.

2.5  "Class 4 Claims" shall mean the Secured Claims of Soy Capital Bank relating to the real estate and improvements situated at

2.6  "Class 5 Claims" shall mean the Secured Claim, if any, of Soy Capital Bank relating to certain personal property owned by the Debtor.

2.7  "Class 6 Claims" shall mean the Secured Claims of General Motors Acceptance Corporation.

2.8  "Class 7 Claims" shall mean Union Claims.

2.9  "Class 8 Claims" shall mean Convenience Claims.

2.10  "Class 9 Claims" shall mean Mechanics Liens.

2.11  "Class 10 Claims" shall mean all Unsecured Claims.

2.12 "Class 11 Interests" shall mean the Interests of all holders of equity security in the Debtor of whatever character, description, nature or liquidation preference.

Unclassified Claims and Claims classified under Classes 1, 2, 3, 4, 6 and 7 in the Plan and Interests classified under Class 14 in the Plan are not impaired under the Plan. All other Claims are impaired by the Plan.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS
## (ADMINISTRATIVE CLAIMS)

3.1  Each Unclassified Claim, including the Government's Administrative Claim and the Administrative Claims of all other taxing bodies, shall be paid in full by Buyer upon the entry of a Final Order of the Bankruptcy Court allowing and authorizing the payment of such Unclassified Claim (if an order allowing and authorizing payment of such Unclassified Claim is either sought or required by either the Bankruptcy Code or the Bankruptcy Rules, or both), or on the Effective Date, whichever is later, unless the holder of an Unclassified Claim agrees to different treatment of its Claim, in which event the provisions of the agreement between Buyer and the claimant with respect to payment of the Unclassified Claim shall govern and shall be incorporated herein by reference.

3.2  Notwithstanding anything contained in paragraph 3.1 to the contrary, each Unclassified Claim that arose in the ordinary course of business of the Debtor as debtor in possession shall be paid in the ordinary course of business of Buyer upon the same terms and conditions as agreed by the Debtor and such holder of an Unclassified Claim.

3.3  All fees payable under Title 28, United States Code §1930, shall be paid in full by the Debtor on or before the Confirmation Date.

## ARTICLE IV

## TREATMENT OF CLASS 1 CLAIMS
## (PRIORITY CLAIMS)

4.1  The holder of each Class 1 Claim shall be paid the full amount thereof in Cash by the Reorganized Debtor upon the entry of a Final Order of the Bankruptcy Court allowing and authorizing the payment of such Class 1 Claim (if an order allowing and authorizing payment of such Class 1 Claim is either sought or required by either the Bankruptcy Code or the Bankruptcy Rules, or

both), or on the Effective Date, whichever is later.

## ARTICLE V

## TREATMENT OF CLASS 2 CLAIMS
## (TAX CLAIMS)

5.1 Subject to the mandatory prepayment obligations set forth in paragraph 5.3 below, the holder of each Class 2 Claim shall be paid on account thereof regular installment payments in Cash of a total value, as of the Effective Date, equal to the allowed amount of such Claim, over a period ending not later than five (5) years after the Petition Date, and in a manner not less favorable than the treatment of Class 10 Claims.

5.2 The first installment payment on account of each Class 2 Claim shall be made one hundred eighty (180) days after the Effective Date, and successive installment payments shall be made every one hundred eighty (180) days thereafter. Interest shall accrue from the Effective Date and be paid on the unpaid balance of each Class 2 Claim at the rate imposed in respect to such Tax Claim under applicable law, if any, until such time as each such Class 2 Claim is paid in full.

5.3 If any Accounts Receivable Recoveries and/or Avoidance Recoveries remain undistributed after the Class 3 Claims and the Class 5 Claims, if any, have been paid in full in accordance with the Plan, then such remaining balance of the Accounts Receivable Recoveries and/or Avoidance Recoveries shall be paid Pro Rata to the holders of the Class 2 Claims.

5.4 The Reorganized Debtor reserves the right to prepay in whole or in part any Class 2 Claim without further interest or penalty.

## ARTICLE VI

## TREATMENT OF CLASS 3 CLAIMS
## (SECURED CLAIMS OF THE GOVERNMENT)

6.1 On and after the Confirmation Date, the Government shall retain its liens attaching to the Real Estate and on certain personal property of T.A. Brinkoetter & Sons in the same manner and in the same order of priority which existed as of the Petition Date to secure payment in full of the Class 3 Claims; provided, however, if the Reorganized Debtor procures a commitment to refinance the indebtedness secured by the first mortgage on the Real Estate pursuant to either paragraph 7.2.a or paragraph 7.2.b below, then the Government shall execute and deliver to the Reorganized Debtor any and all documents as may be necessary or required to subordinate the Government's lien on the Real Estate to the first mortgage to be granted by the Reorganized Debtor to the lender under any such refinancing commitment.

6.2 Subject to the mandatory prepayment obligations set forth in paragraph 6.4 below, the

holder of the Class 3 Claims shall be paid in the same manner as Tax Claims in accordance with paragraphs 5.1 and 5.2 above.

6.3 The Reorganized Debtor reserves the right to prepay in whole or in part the Class 3 Claims without further interest or penalty.

6.4 Notwithstanding anything contained in this Article VI to the contrary, if the security interests asserted by the holder of Class 5 Claims is avoided by Final Order, then one hundred percent (100%) of Accounts Receivable Recoveries and Avoidance Recoveries shall be paid to the Government until such time as the Class 3 Claims are paid in full. If the Bankruptcy Court determines that the security interests asserted by the holder of the Class 5 Claims are valid and enforceable, then the Avoidance Recoveries shall be distributed to the holder of the Class 5 Claims. If any Avoidance Recoveries remain after payment of the Class 5 Claims in full, then such remaining balance of the Avoidance Recoveries shall be paid to the Government on account of its Class 3 Claims.

6.5 At such time as the Class 3 Claims are paid in full, the Government shall execute and deliver to the Reorganized Debtor any and all documents as may be requested, necessary or required to cancel, terminate, expunge and release all liens and security interests held by the holder of the Class 3 Claims in and to property of the Debtor and of the Reorganized Debtor.

## ARTICLE VII

### TREATMENT OF CLASS 4 CLAIMS
### (SECURED CLAIMS OF SOY CAPITAL BANK IN THE REAL ESTATE)

7.1 On and after the Confirmation Date, the holder of the Class 4 Claims shall retain its mortgage attaching to the Real Estate.

7.2 Class 4 Claims shall be paid in accordance with one of the following alternatives:

   a. terms and conditions mutually agreeable to the holder of the Class 4 Claims and the Reorganized Debtor;
   b. the net funds procured by the Reorganized Debtor through a refinancing of the existing mortgage indebtedness on the Real Estate, subject to the consent of the holder of the Class 4 Claims, which consent shall not be unreasonably withheld; or
   c. the net proceeds realized by the holder of the Class 4 Claims through its foreclosure and sale of the Real Estate.

7.3 If and to the extent the Class 4 Claims are not paid in full pursuant to paragraph 7.2 above, then any remaining unpaid balance thereof shall be treated under Class 10 in the Plan.

7.4 If and at such time as the Class 4 Claims are paid in full, the holder of the Class 4 Claims

shall execute and deliver to the Reorganized Debtor any and all documents as may be requested, necessary or required to cancel, terminate, expunge and release all liens, mortgages and security interests held by the holder of the Class 4 Claims in and to property of the Debtor and of the Reorganized Debtor.

## ARTICLE VIII

### TREATMENT OF CLASS 5 CLAIMS
### (SECURED CLAIMS OF SOY CAPITAL BANK
### IN CERTAIN PERSONAL PROPERTY)

8.1   On and after the Confirmation Date, and subject to a Final Order entered by the Bankruptcy Court after notice and a hearing, the holder of the Class 5 Claims shall retain its asserted security interests in and to certain personal property owned by T.A. Brinkoetter as of the Petition Date.

8.2   The Debtor or the Reorganized Debtor, as the case may be, intends to seek a determination from the Bankruptcy Court that the security interests asserted by the holder of the Class 5 Claims in certain personal property of T.A.Brinkoetter, the Debtor and/or the bankruptcy estate are null and void, and of no force and effect.  If the Bankruptcy Court enters its Final Order granting such request for relief, then the Class 5 Claims shall be deemed Unsecured Claims and treated under Class 10 in the Plan.

8.3   If the Bankruptcy Court determines that the security interests asserted by the holder of the Class 5 Claims are valid and enforceable, then the Reorganized Debtor shall pay and Avoidance Recoveries to the holder of the Class 5 Claims until the Class 5 Claims are paid in full.

8.4   If the Class 5 Claims are treated as Secured Claims under the Plan, then upon the earlier to occur of payment in full of the Class 5 Claims, and the distribution of all Avoidance Recoveries to the holder of the Class 5 Claims, the holder of the Class 5 Claims shall execute and deliver to the Reorganized Debtor any and all documents as may be requested, necessary or required to cancel, terminate, expunge and release all liens and security interests held by the holder of the Class 5 Claims in and to property of the Debtor and of the Reorganized Debtor.

8.5   If Class 5 Claims are treated as Secured Claims and are not paid in full pursuant to paragraph 8.3 above, then the unpaid balance of the Class 5 Claims shall be treated as Unsecured Claims under Class 10 in the Plan.

## ARTICLE IX

## TREATMENT OF CLASS 6 CLAIMS
## (SECURED CLAIMS OF GENERAL MOTORS ACCEPTANCE CORPORATION)

9.1   The holder of the Class 6 Claims shall be paid in accordance with the Final Order entitled "Order Granting Authorization to Make Adequate Protection Payments" entered by the Bankruptcy Court on July 16, 2009; namely the Reorganized Debtor shall continue making regular monthly payments to the holder of the Class 6 Claims in the amount of $1,067.35.

9.2   Until such time as the Class 6 Claims are paid in full, the holder of the Class 6 Claims shall continue to hold a valid, perfected, first priority lien and security interest in and to (a) that certain 2005 Chevrolet Impala motor vehicle VIN 2G1WF52E859394691, (b) that certain 2008 Chevrolet Impala LS motor vehicle VIN 2G1WB58K581296973, and (c) that certain 2008 Chevrolet Malibu motor vehicle VIN 1G1ZG57B884243768 to secure payment of the Class 6 Claims. At such time as the Class 6 Claims are paid in full, the holder of the Class 6 Claims shall execute and deliver to the Reorganized Debtor any and all documents as may be requested, necessary or required to cancel, terminate, expunge and release all liens and security interests held by the holder of the Class 6 Claims in and to property of the Debtor and of the Reorganized Debtor.

## ARTICLE X

## TREATMENT OF CLASS 7 CLAIMS
## (UNION CLAIMS)

10.1   Union Claims shall be paid in full and in Cash on the Effective Date.

## ARTICLE XI

## TREATMENT OF CLASS 8 CLAIMS
## (CONVENIENCE CLAIMS)

11.1   In full and final satisfaction of Class 8 Claims, the holder of each Class 8 Claim shall be paid twenty percent (20%) of the amount thereof in Cash and without interest through one lump sum payment to be made one hundred eighty (180) days after the Effective Date.

## ARTICLE XII

## TREATMENT OF CLASS 9 CLAIMS
## (MECHANICS LIENS)

12.1   Except as provided in paragraph 12.2 below, Mechanics Liens shall remain unaltered and are not impaired by the Plan. On and after the Confirmation Date, any Mechanics Lien shall

continue in full force and effect against property of the estate or otherwise, subject to any and all rights, claims, demands and defenses which the Debtor, the Reorganized Debtor or any third party may have with respect thereto.

12.2  Notwithstanding anything to the contrary contained in paragraph 12.1 above, any holder of a Mechanics Lien shall be barred from seeking to enforce its Mechanics Lien in a court of competent jurisdiction if (a) the Claim of a holder of a Mechanics Lien is disallowed by Final Order entered by the Bankruptcy Court, or (b) the Mechanics Lien is determined to be void or voidable by a Final Order entered by the Bankruptcy Court.

12.3  No distribution of Cash will be made under the Plan on account of Class 9 Claims. The Allowed Claim of each holder of a Mechanics Lien shall be treated and receive distributions as an Unsecured Claim under Class 10 in the Plan.

## ARTICLE XIII

### TREATMENT OF CLASS 10 CLAIMS
### (UNSECURED CLAIMS INCLUDING CLASS 9 CLAIMS)

13.1  In full and final satisfaction of Class 10 Claims, the holder of each Class 10 Claim shall receive the following:

a.  Within sixty (60) days after the Effective Date, its Pro Rata share of 250,000,000 shares of common stock of SARS to be issued by SARS to the Reorganized Debtor on the Effective Date; provided, however, fractional shares of common stock will not be issued, and the number of shares of common stock to be issued to the holder of each Class 10 Claim will be rounded to the nearest full share, and

b.  Its Pro Rata share of any undistributed Accounts Receivable Recoveries and/or Avoidance Recoveries after all Class 5 Claims, if any, Class 3 Claims and Class 2 Claims have been paid in full in accordance with the Plan.

## ARTICLE XIV

### TREATMENT OF CLASS 11 INTERESTS
### (SHAREHOLDER INTERESTS)

14.1  All Class 11 Interests shall remain unaltered and are not impaired by the Plan.

## ARTICLE XV

## MEANS FOR EXECUTION OF THE PLAN

15.1   **THE HOLDERS OF UNSECURED CLAIMS WHO ELECT TO VOLUNTARILY REDUCE THEIR CLAIMS TO $15,000.00 AND TO BE TREATED UNDER CLASS 8 IN THE PLAN MUST SO INDICATE THEIR ELECTION ON THE BALLOT THAT ACCOMPANIES THIS PLAN.**

15.2   On the Effective Date, Shareholder shall remit to the Reorganized Debtor a sum of up to $1,500,000.00 as and for a capital investment in the Reorganized Debtor.  The Reorganized Debtor shall utilize such funds as follows:

      a.   To pay in full and in Cash all Administrative Claims due to be paid on the Effective Date in accordance with paragraph 3.1 above;

      b.   To pay in Cash and in accordance with the Plan the Claims classified under Classes 1, 7 and 8 in the Plan;

      c.   To deposit in a segregated account the sum of $25,000.00 to be held as a retainer for Professional Persons employed by the Reorganized Debtor to represent it in the analysis and prosecution of proceedings related to Avoidance Recoveries, with the employment of such Professionals Persons and the compensation thereof to be subject to the prior approval of the Bankruptcy Court, after notice and a hearing;

      d.   To deposit in a segregated account, which account shall be held separate and apart from the account referenced in paragraph 15.2.c above, the sum of $25,000.00 to be held as a retainer for professionals employed by the Reorganized Debtor pursuant to paragraph 1.1 above to represent it in the analysis and prosecution of actions relating to Accounts Receivable Recoveries; and

      e.   To utilize the remaining balance of the capital investment as and for working capital in the ordinary course of business.

15.3   In addition to the capital investment referred to in paragraph 15.2 above, the other funds required to implement the Plan shall be derived from (a) Accounts Receivable Recoveries, (b) Avoidance Recoveries, (c) borrowings under the Post-Confirmation Credit Facility, if any, and (d) funds generated by the Reorganized Debtor in the operation of its business.

15.4   On the Effective Date, SARS shall issue and deliver to the Reorganized Company 700,000,000 shares of common stock of SARS. The Reorganized Debtor shall issue such shares as follows:

14

a.  450,000,000 shares of common stock of SARS to Grandview Capital LLC in exchange for funds advanced by Grandview Capital LLC to SARS to enable SARS to remit the capital investment referred to in paragraph 15.2 above; and

b.  250,000,000 shares of common stock of SARS to the holders of Class 10 Claims Pro Rata in accordance with paragraph 13.1.a above.

15.5  Except as otherwise provided in the Plan, the Disbursement Agent shall make all payments required to be made under the Plan to and for the benefit of all Creditors whose Claims are treated under the Plan.

15.6  Any and all compromises of claims relating to Avoidance Recoveries shall be subject to the entry of a Final Order of the Bankruptcy Court, after notice and a hearing.

15.7  Confirmation of the Plan shall not be subject to the liquidation of any of the property of the Reorganized Debtor, nor is the need for further financial reorganization of the Reorganized Debtor contemplated by the Plan; provided, however, the Reorganized Debtor reserves the right to sell, transfer, trade or otherwise dispose of any its property as it deems appropriate.

15.8  No governmental regulatory commission has jurisdiction over the rates of the Debtor, and therefore no approval of any such commission is necessary or required.

15.9  The Debtor does not maintain any retirement benefit plans, and therefore the Plan need not provide for the continuation of any such plans pursuant to §§1114 and 1129(a)(13) of the Bankruptcy Code.

15.10  On the Effective Date, the Reorganized Debtor shall implement such amendments and revisions, if any may be needed, to its articles of incorporation and by-laws to effectuate the transactions contemplated by the Plan.

15.11  The Debtor reserves the right, pursuant to §1129(b) of the Bankruptcy Code, to request the Bankruptcy Court to confirm the Plan if all applicable requirements of §1129(a) of the Bankruptcy Code other than §1129(a)(8) are met.

15.12  The Debtor and the Reorganized Debtor shall prosecute all objections to Claims, without prejudice to any other Creditor asserting an objection to a Claim.

15.13  The Debtor, the Reorganized Debtor and the Disbursement Agent, and their respective Professional Persons, directors, officers, employees and agents, shall exercise ordinary care in the discharge of their respective duties under the Plan. After the Confirmation Date, all such entities and persons shall not be subject to any cause of action by any party or Creditor for any act which they took in the reasonable exercise of their business judgment or that was approved by the Bankruptcy Court.

15.14  All reasonable fees and expenses earned and incurred by the Disbursement Agent, if any, shall be paid by the Reorganized Debtor.

## ARTICLE XVI

## DISTRIBUTIONS TO CREDITORS

16.1  "Unclaimed Distributions" shall mean any distribution of Cash to which a Creditor is entitled and which such Creditor has not claimed on or before six (6) months following the date on which such distribution is returned as undeliverable, and all interest thereon, shall be promptly delivered to the Disbursement Agent, to be held in a special account subject to the Final Distribution provisions set forth below.  At the end of said period set forth for Final Distribution, the holders of Allowed Claims theretofore entitled to distributions which remain unclaimed shall cease to be entitled thereto, and the unclaimed distributions, plus all interest earned thereon, shall become the sole and exclusive property of the Reorganized Debtor.

16.2  "Final Distribution" shall constitute the last payment to Creditors under the Plan.  On the date on which all Claims in each class of Claims are allowed or otherwise resolved pursuant to Final Order, the Disbursement Agent shall make a final recalculation of the distributions to the holders of Class 10 Claims, taking into account the resolution of Contested Claims and Ultimately Allowed Claims, and distributions made and permitted under the Plan.  Upon completion of such final recalculations, the Disbursement Agent shall make any additional payments as may be required pursuant to Final Order to a holder of a Class 10 Claim and shall distribute Pro Rata to the holders of Class 10 Claims all reserved funds, inclusive of interest earned thereon, if any, not previously used to pay Claims.

## ARTICLE XVII

## REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

17.1  In addition to any and all other executory contracts and unexpired leases heretofore assumed by the Debtor pursuant to §365 of the Bankruptcy Code, the Debtor hereby elects to assume the following executory contracts:

| COUNTERPARTY UNDER EXECUTORY CONTRACT | NATURE OF EXECUTORY CONTRACT |
| --- | --- |
| Building & Common Laborers Union Local 159 | Collective bargaining agreement |
| IBEW Local Union 34 | Collective bargaining agreement |
| IBEW Local Union 146 | Collective bargaining agreement |
| IBEW Local Union 176 | Collective bargaining agreement |

16

| | |
|---|---|
| IBEW Local Union 193 | Collective bargaining agreement |
| IBEW Local Union 601 | Collective bargaining agreement |
| Local 99 Plumbers & Pipefitters | Collective bargaining agreement |
| Millwright Local Union 1051 | Collective bargaining agreement |
| Operating Engineers Local 965 | Collective bargaining agreement |
| Plumbers & Pipefitters Local 65 | Collective bargaining agreement |
| Plumbers & Pipefitters Local 137 | Collective bargaining agreement |
| Plumbers & Pipefitters Local 149 | Collective bargaining agreement |
| Plumbers & Pipefitters Local 157 | Collective bargaining agreement |
| Sheet Metal Workers Local 1 | Collective bargaining agreement |
| Sheet Metal Workers Local 218 | Collective bargaining agreement |
| Decatur Improvement Association, Inc. | Ground lease-126 South Webster, Decatur, IL |

17.2  All defaults existing as of the Effective Date arising under the executory contracts enumerated in paragraph 17.1 above shall be paid in full and in Cash on the Effective Date in accordance with Article X above.

17.3  All executory contracts and unexpired leases of the Debtor entered into prior to the Petition Date and that are not assumed or rejected by the Debtor pursuant to §365 of the Bankruptcy Code prior to the Confirmation Date, or assumed by the Debtor pursuant to paragraph 17.1 above and the Confirmation Order, shall be deemed rejected upon the Confirmation Date.

17.4  Each non-debtor party to an executory contract or an unexpired lease rejected hereunder shall have thirty (30) days from the Confirmation Date to file a proof of claim with the Bankruptcy Court asserting damages arising from such rejection, or be forever barred from asserting any such Claim.  Contemporaneous with the filing of such proof of claim, said non-debtor party shall serve a copy of the proof of claim upon the parties specified and in accordance with the terms contained in Article XXI, paragraph 21.2 below.

## ARTICLE XVIII

## MODIFICATION OF THE PLAN

18.1  Without order of the Bankruptcy Court and at any time before the Confirmation Date, SARS may amend or modify this Plan, provided that such Plan, as amended or modified, meets the requirements of §§1122 and 1123 of the Bankruptcy Code, and SARS shall have complied with §1125 of the Bankruptcy Code.

18.2  The Plan may be modified at any time after confirmation and before its substantial consummation, provided such Plan, as modified, meets the requirements of §§1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms such Plan, as modified, under §1129 of the Bankruptcy Code, and the circumstances warrant such modification.

18.3  A holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time specified by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XIX

## PROCEDURES FOR RESOLVING CONTESTED CLAIMS

19.1  To the extent that an objection relates only to a portion of a Claim, the remainder of such Claim shall be deemed an Allowed Claim, and only that portion of the Claim as to which an objection has been filed shall be deemed a Contested Claim.

19.2  At the time of any distributions to Creditors provided for under the Plan, the Disbursement Agent shall reserve the amount of Cash and shares of common stock of SARS as it deems necessary and appropriate to account for all Contested Claims that are either Class 9 Claims or Class 10 Claims. The Disbursement Agent shall hold funds and shares of common stock so reserved pursuant to this subparagraph and not distribute such funds to other Creditors. Upon any such Contested Claim becoming an Ultimately Allowed Claim, the amount of Cash and shares of common stock then due to the holder of such Ultimately Allowed Claim shall be distributed to such Creditor without interest. Such distributions to each holder of a Contested Claim that becomes an Ultimately Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the class of Claims to which the respective holder of such Ultimately Allowed Claim belongs. The distributions to holders of such Ultimately Allowed Claims shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order. Unless and until a Contested Claim becomes an Ultimately Allowed Claim, no holder of a Contested Claim shall have any Claim against the Cash reserved on account of such Contested Claim.

## ARTICLE XX

## CORPORATE GOVERNANCE OF THE REORGANIZED DEBTOR

20.1  On and after the Confirmation Date, and subject to the by-laws of the Reorganized Debtor, the Board of Directors of the Reorganized Debtor shall be comprised of Frank Bonadio, Mark Swank and Phillip Heinz, who shall serve as directors of the Reorganized Debtor without compensation until such time as all distributions in Cash required under the Plan, if any, to the holders of Class 10 Claims have been made.

20.2  On the Confirmation Date, all of the executive officers of the Debtor shall be retained by the Reorganized Debtor; namely, Mark Swank, as Chairman; Frank Bonadio, as Chief Executive Officer and President; Phillip Heinz, as Chief Financial Officer and Executive Vice-President; Todd Robinson, as Vice-President; and Dennis Power, as Divisional President of Operations. For the first calendar year following the Confirmation Date, the annual salaries of the for3going officers shall be

the following:

| | |
|---|---|
| Mark Swank | $41,600.00 |
| Frank Bonadio | $75,000.00 |
| Phillip Heinz | $87,500.00 |
| Todd Robinson | $47,736.00 |

Each officer shall be entitled to an annual cost of living increase of four percent (4%) until such time as Final Distributions in Cash, if any are required under the Plan, have been made to the holders of Class 10 Claims.

20.3 No dividends shall be paid to any of the shareholders of the Reorganized Debtor until such time as all distributions in Cash required under the Plan, if any, to the holders of Class 10 Claims have been made.

## ARTICLE XXI

### GENERAL PROVISIONS

21.1 <u>Extension of Payment Dates</u>: If any payment under the Plan falls due on a Saturday, Sunday or other day which is not a Business Day, then such due date shall be extended to the next following Business Day.

21.2 <u>Notices</u>: Any notice hereunder to the Reorganized Debtor shall be in writing and, if by telegram, telex, or facsimile, shall be deemed to have been given when sent, and if mailed, shall be deemed to have been given three (3) days after the date when sent by registered or certified mail, postage prepaid, and addressed as follows:

> If to the Debtor or Reorganized Debtor:
> T.A. Brinkoetter & Sons, Inc.
> Attn:  President
> 2485 Washington Road
> Washington, Illinois 61571
>
> With a copy to:
> Sumner A. Bourne
> RAFOOL & BOURNE PC
> 411 Hamilton Boulevard, Suite 1600
> Peoria, Illinois 61602

If to SARS:
SARS Corporation
Attn: President
2485 Washington Road
Washington, Illinois 61571

With a copy to:
Charles S. Stahl, Jr.
SWANSON, MARTIN & BELL, LLP
2525 Cabot Drive, Suite 204
Lisle, Illinois 60532

21.3 Transfer of Claims: In the event that the holder of any Claim shall transfer such Claim, it shall immediately advise the Reorganized Debtor in writing of such transfer by giving written notice in accordance with paragraph 21.2, above. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken hereunder and, except as otherwise expressly provided in such notice, the Reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers under the Plan of the transferor.

21.4 Captions: Paragraph captions used in the Plan are for convenience only and shall not affect construction of the Plan.

21.5 Severability: Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

21.6 Successors and Assigns: The rights and obligations of any person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors or assigns of such person or entity.

## ARTICLE XXII

### RETENTION OF JURISDICTION

22.1 Notwithstanding confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction for the following purposes:

a. Determination of the allowability of Claims, upon objection to such Claims by any party in interest;

b. Determination of requests for payment by Professional Persons and Claims entitled to priority under §§503 and 507 of the Bankruptcy Code, including compensation of parties entitled thereto;

c. Resolution of controversies and disputes regarding interpretation of the Plan, and the entry of orders in aid of implementation of the Plan;

d. Modification of the Plan pursuant to §1127 of the Bankruptcy Code;

e. Adjudication of any causes of action brought by the Debtor or the Reorganized Debtor, including, but not necessarily limited to, causes of action relating to Avoidance Recoveries; and

f. Entry of a final decree closing the Debtor's case.

## ARTICLE XXIII

## EFFECT OF CONFIRMATION

23.1  Except as otherwise provided in the Plan or the Confirmation Order, the confirmation of the Plan shall bind the Debtor, the Reorganized Debtor and all holders of Claims against and interests in the Debtor and its estate, whether or not the foregoing persons and entities are impaired under the Plan and whether or not any of the foregoing persons or entities have voted on or accepted the Plan.

23.2  Except as otherwise provided in the Plan or the Confirmation Order, all of the property of the Debtor's estate, including any and all causes of action as might be available to the Debtor, shall be vested in the Reorganized Debtor on the Confirmation Date, subject to any obligations secured thereby and to the provisions of the Plan.

23.3  Except as provided for in §§1141(d) of the Bankruptcy Code, and except as otherwise provided in the Plan or in the Confirmation Order, on the Confirmation Date the property of the Debtor's estate shall be free and clear of all liens, Interests, and Claims.

## ARTICLE XXIV

## OTHER MATERIALS

24.1  The attention of holders of Claims and Interests is directed to the Disclosure Statement dated as of April 23, 2010.

Dated:  April 23, 2010

Respectfully submitted,

SARS CORPORATION

By: /s/ Frank Bonadio
      Its President

By: /s/ Charles S. Stahl, Jr.
      One of its attorneys

Charles S. Stahl, Jr.
Ross W. Bartolotta
SWANSON, MARTIN & BELL, LLP
2525 Cabot Drive, Suite 204
Lisle, Illinois 60532
(630) 799-6990
Fax: (630) 799-6901

22