**SIGNED THIS: March 28, 2012**

_____

**Thomas L. Perkins**
**United States Chief Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| T.A. BRINKOETTER & SONS, INC., | ) | No.  09-80727 |
| | ) | |
| Debtor. | ) | |

**O P I N I O N**

Are penalties and interest assessed when a chapter 11 debtor-in-possession fails to

timely pay postpetition fringe benefits entitled to administrative expense status?  This is

the issue raised in the petition for administrative expenses (treated as a motion under Fed.

R. Bankr. P. 9013 and 9014) filed by the NECA-IBEW Pension Fund and the NECA-IBEW

Welfare Fund (together the FUNDS).

The Debtor, T.A. Brinkoetter & Sons, Inc. (DEBTOR), a contractor, filed a chapter 11

petition on March 10, 2009, and operated its business as a debtor-in-possession until the

case converted to chapter 7 on June 6, 2011.  The DEBTOR employed union electricians

pursuant to certain collective bargaining agreements (CBAs) with IBEW Locals 34, 146, 193

and 601. The DEBTOR took no action to reject or modify the CBAs, under section 1113 or otherwise.

The wages due the electricians for their postpetition, preconversion services have been fully paid by the DEBTOR. The CBAs required the DEBTOR to make contributions to the FUNDS. The DEBTOR failed to pay the required contributions when due, thus incurring interest and penalties. Whether the interest and penalties should be accorded administrative priority status is at issue.

The FUNDS claim priority under Bankruptcy Code sections 507(a)(2) and 503(b)(1)(A). Under the latter section, there shall be allowed administrative expenses, including "the actual, necessary costs and expenses of preserving the estate including wages, salaries, and commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). The services must have provided a postpetition benefit to the estate. *In re A.C.E. Elevator Co., Inc.*, 347 B.R. 473, 481 (Bankr.S.D.N.Y. 2006). The categories of administrative expenses listed in section 503(b) are intended to be illustrative, not exhaustive. *In re Supermarket Investors, Inc.*, 441 B.R. 333, 343 (Bankr.E.D.Ark. 2010). Administrative priority claims are strictly construed so as not to unjustifiably dissipate limited estate assets. *In re SpecialtyChem Products Corp.*, 372 B.R. 434, 440 (E.D.Wis. 2007). The creditor bears the burden of showing an entitlement to administrative priority by a preponderance of the evidence. *Id.*

The FUNDS rely upon *In re World Sales, Inc.*, 183 B.R. 872 (9th Cir.BAP 1995), where the debtor closed its doors eighteen days after filing chapter 11. The union employees'

benefit fund sought administrative priority for the full monthly contribution to the health

plan, plus damages due on default under the unrejected collective bargaining agreement.

The bankruptcy court allowed only 18/31 of the monthly contribution as an administrative

expense.  Relying upon section 1113(f), as well as its determination that any amount of

work during a month entitled an employee to health insurance coverage during the entire

month, the bankruptcy appellate panel reversed the bankruptcy court, holding that a full

month's contribution for each employee who worked during the month was entitled to

administrative priority.  The appellate panel determined that liquidated damages, interest

and attorney fees, all due under the CBA, were to be accorded the same priority.

This Court disagrees with the *World Sales* court's conclusion that consequential

damages that accrue under a collective bargaining agreement are entitled to administrative

priority treatment.  Although the Seventh Circuit has not spoken, a majority of circuit

courts of appeal have held that a debtor's obligation to comply with the terms of a

collective bargaining agreement under section 1113 does not preempt the priority scheme

of section 507.  *Peters v. Pikes Peak Musicians Ass'n.*, 462 F.3d 1265 (10th Cir. 2006); *Adventure*

*Resources Inc. v. Holland*, 137 F.3d 786 (4th Cir. 1998); *Air Line Pilots Association International*

*v. Shugrue (In re Ionosphere Clubs, Inc.)*, 22 F.3d 403 (2nd Cir. 1994); *In re Roth American, Inc.*,

975 F.2d 949 (3rd Cir. 1992).  *Contra, United Steelworkers of America v. Unimet Corp. (In re*

*Unimet Corp.)*, 842 F.2d 879 (6th Cir. 1988).  This Court has previously expressed agreement

with the majority rule. *In re Fleming Packaging Corp.*, 2004 WL 2106579 (Bankr.C.D.Ill. 2004).

Postpetition liabilities arising from the breach of a collective bargaining agreement may be

accorded priority status only if they qualify for priority treatment under section 507. *In re Stokes Excavating, Inc.,* 2011 WL 6176585 (Bankr.N.D.Ill. 2011). The *World Sales* decision is contrary to the majority rule and the FUNDS' reliance on the fact that the CBAs are "unrejected" is misplaced.

It is difficult to see how liquidated damages in the nature of a penalty could qualify as an expense necessary to preserve the estate. The compensation for the postpetition services performed by the electricians, their wages and benefits, has been paid by the DEBTOR. The liquidated damages provision penalizes the DEBTOR for its failure to pay its contributions to the FUNDS on a timely basis. An interest obligation is assessed separately, so the liquidated damages are not compensation for an involuntary loan – they are a true penalty. In this Court's view, liquidated damages in the nature of a penalty are not a form of compensation for a benefit to the estate, and thus may not be accorded administrative priority status. This is the conclusion reached in *In re Fred Swain, Inc.,* 97 B.R. 660 (Bankr.S.D.Fla. 1989), with which this Court agrees.

Unlike liquidated damages, interest is compensation for the use of money and, as such, is usually considered to be a fair *quid pro quo* for a debtor's failure to pay its obligations on a timely basis, which failure is financially beneficial to the estate and detrimental to the creditor. As such, an obligation to pay interest may qualify for administrative priority status under section 503(b)(1).

Conversion of a chapter 11 case to one under chapter 7, however, impacts the priority entitlement. This Court agrees with *In re Colortex Industries, Inc.,* 19 F.3d 1371 (11th

Cir. 1994), where the debtor operated its business in a chapter 11 case for several months before converting to chapter 7. After conversion, several trade creditors that had provided services to the debtor while in chapter 11 sought administrative priority treatment of the cost of the services plus interest. Relying on the Supreme Court's rational in *Nicholas v. U.S.,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), the Eleventh Circuit held that interest on trade debts incurred as administrative expenses during chapter 11 enjoys the same priority as the administrative expense itself, but only until conversion. Interest that accrues after conversion to chapter 7 does not enjoy administrative expense priority, but is entitled only to the fifth level priority under section 726(a)(5). *Colortex,* 19 F.3d at 1384. *Accord, In re Olympia Holding Corp.,* 250 B.R. 136 (Bankr.M.D.Fla. 2000).

Applying the *Colortex* rule here means that only the interest that accrued on the unpaid contributions due the FUNDS while the DEBTOR was in chapter 11 is entitled to administrative priority status. Interest that accrued after conversion is not entitled to administrative expense priority under sections 507(a)(2) and 503(b)(1).

The burden is on the FUNDS to recalculate the priority interest in accordance with this Opinion. That calculation should state:

(1)    the amount of each contribution that came due after the chapter 11 petition was filed on March 10, 2009, that was not timely paid;

(2)    the date that each such contribution became payable, which will be the starting date for interest accrual unless otherwise indicated;

(3)    the ending date for the accrual of interest, which should be the date of conversion, June 6, 2011, unless the delinquent contribution was paid earlier;

(4)    the applicable interest rate, which is alleged by the FUNDS to be, by contract,

twice the prime rate, presumably 6.5% per annum[1];

(5)   the total amount of interest accrued for each such contribution during the pendency of the chapter 11 case; and

(6)   the total aggregate amount of interest claimed to be due each of the FUNDS as an administrative expense priority.

The FUNDS will be ordered to file this calculation within twenty-eight days and the

TRUSTEE will be given twenty-one days to object.

This Opinion constitutes this Court's findings of fact and conclusions of law in

accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be

entered.

### 

---

[1]The U.S. Prime Rate went to 3.25% on December 16, 2008, and has remained there since.  In this Court's view, an interest rate of 6.5% in the current interest rate environment represents reasonable compensation for the time value of the funds in question here.  A substantially higher rate could be viewed as an impermissible penalty.